IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-115-TSE |
| | ) | |
| FRANK BOONE MCDOWELL, III, | ) | Sentencing: December 14, 2018 |
| Defendant. | ) | |

## United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Frank Boone McDowell, III. The United States requests that this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR"), which indicates that the appropriate Guidelines range is 30-37 months with respect to incarceration.[1] The United States will also file a separate, sealed motion for downward departure under Section 5K1.1 of the Guidelines. Based on the advisory Guidelines range, the United States' motion filed under seal, the § 3553(a) factors, and the Court's sentencing of Peder Cox, a variant sentence of incarceration of 6 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

---

[1] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G § 3E1.1(b), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

1

A sentence of 6 months captures the seriousness of defendant's decision to steal money from his employer and to submit fraudulent documentation to a financial institution. Accordingly, the United States requests that this Court impose a sentence of imprisonment of 6 months, a period of supervised release, full restitution as described in greater detail below, and an order of forfeiture.

**I.    Factual Background**[2]

McDowell is a 62-year-old resident of Apex, North Carolina. Before entering business, McDowell had an extensive and distinguished career in the United States Army and the reserves, retiring as a Lt. Colonel in 2006. PSR ¶¶ 73-74, 90.

Around 2009, Gryphon Holdings, LLC ("Gryphon") hired McDowell as Director of Business Development. PSR ¶ 9. Gryphon was an aviation services company based in Kuwait, majority owned by A.A., a Kuwaiti national. PSR ¶ 8. Gryphon developed and managed an air field and associated buildings at Bagram Air Base in Afghanistan. *Id*. In 2010, McDowell was promoted to Chief Operating Officer ("COO") of Gryphon Airlines, a subsidiary of Gryphon. *Id*. at ¶ 9. Around the same time, A.A. formed FK Logistics, LLC ("FK") in Delaware, in order to facilitate the development of U.S.-based clients for Gryphon and FK Kuwait, the parent company. *Id*. at ¶ 10. In 2011, A.A. opened a Bank of America business checking account for FK ("FK BoA account"), with A.A. and McDowell as the authorized signers on the account. *Id*. at ¶ 11. This was the only authorized bank account for FK. *Id*.

In late 2011, McDowell's hired co-defendant Peder Cox to help him locate clients to lease the Bagram facility. PSR ¶ 12. Cox was hired as the Director of Business Development for Gryphon Airlines. He was later named Vice-President and Chief Operating Officer FK Logistics

---

[2] The PSR and the Statement of Facts ("SoF") signed by the defendant adequately set forth the offense conduct in this case.

USA ("FK"). SoF ¶ 5. As COO, Cox was responsible for developing business for the company and also managing the day-to-day operations with Frank McDowell. *Id.* at ¶¶ 5-6. Major business decisions and expenditures were to be communicated to A.A. in Kuwait for review and approval. *Id*. at ¶ 6. In 2012, defendant Cox negotiated a lease on behalf of FK with Company A, which began making lease payments in April 2012 to a Bank of America ("BoA") account in the name of FK. *Id*. at ¶ 7.

Just two months later, Cox and McDowell created a separate bank account for FK with HSBC bank, and Cox directed Company A to send its payments to that account. PSR ¶ 16, SoF ¶9. Cox and McDowell created this account without the knowledge or approval of A.A., FK's owner. In doing so, Cox and McDowell prevented A.A. from maintaining any visibility into the financial dealings of the company. In order to open that account, Cox made a series of material misrepresentations to HSBC bank, including representing that Cox and McDowell were the owners of FK. Cox even created a completely fabricated and fictitious operating agreement for FK, which falsely claimed Cox and McDowell as the only members of the company. PSR ¶ 16(b).

A.A. ordered McDowell to terminate Cox by February of 2013; however, McDowell and Cox continued to provide Cox with salary payments through the HSBC account without A.A.'s knowledge or approval. PSR ¶¶ 24-25. Additionally, in late 2013, McDowell and Cox created a separate entity known as MSC Global and opened an account for this entity with money from the FK HSBC account. The only owners of MSC Global were Cox and McDowell. PSR ¶ 25. In total, between the HSBC and Fulton accounts, Cox and McDowell diverted a total of $255,060.22. Cox received a total of $184,739.20 from FK and MSC Global bank accounts. PSR ¶ 43. McDowell received substantially less, approximately $70,321.02. *See id.* at ¶ 43.

On March 29, 2018, McDowell pleaded guilty to a money laundering conspiracy. That offense of conviction carried with it a higher offense level, and greater enhancements under the guidelines than those applied to Cox.[3] As a result, McDowell's guideline range is 30-37 months.

## II.     Guidelines Calculation

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the revised PSR found a base offense level of 6; a 12 level enhancement for loss over $250,000; a two-level enhancement for the money laundering conviction; and a two-level adjustment for abuse of a position of public or private trust. It also includes a three-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty. The United States asks this Court to adopt the PSR's findings and advisory Guidelines range as set forth in the PSR.

## III.    Section 3553(a) Factors

As the Court is also well aware, after calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense," "the history and

---

[3] Cox concealed from the IRS the substantial income he derived from defrauding FK. As a result, and due in part to the earlier guilty plea of McDowell, Cox pleaded guilty to a one-count criminal information charging him with filing a false tax return, in violation Title 26, United States Code, Section 7206(1). Cox's plea took place on July 24, 2018. Cox's guidelines range was 12-18 months. On December 7, 2018, this Court ultimately sentenced Cox to 9 months in prison.

characteristics of the defendant," and the need "to promote respect for the law." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). The need for a variant sentence of 6 months is also just and appropriate in this case in order to avoid unwarranted sentencing disparities. *See* § 3553(a)(6). On December 7, 2018, this Court sentenced co-defendant Peder Cox to 9 months in the Bureau of Prisons.[4] In imposing sentence, the Court noted that both men were equally culpable and had similarly lengthy and distinguished careers serving the United States in uniform. While the Court correctly noted that the defendants are equally culpable for the offenses that led to their convictions, unlike defendant Cox, defendant McDowell immediately accepted responsibility for his actions, and as noted in the government's sealed motion, has offered substantial assistance in this case. Moreover, he has continued to express genuine remorse for the actions that have led him to be before this Court..

Nevertheless, the circumstances surrounding the conduct here were unquestionably serious. Indeed, both McDowell and Cox were entrusted by A.A. to run FK without fear that they would ultimately siphon money from the company and use that money for their own personal benefit. With respect to defendant McDowell, he was trusted by the victim in this case, A.A. Indeed, at the Sentencing Hearing of co-defendant Cox, A.A. stated that he had treated McDowell as "a brother" and was hurt most by McDowell's betrayal of his trust.

The conduct here was intentional and not isolated to one poor choice. Rather, McDowell and Cox decided to provide a fabricated operating agreement to a bank, and to falsely tell the bank they were the owners of FK, in order to open a new bank account. They did this to cut out the owner of the business, and to distribute the money as they saw fit, essentially without oversight. And the criminal activity did not stop there. After A.A. discovered the existence of the HSBC bank

---

[4] *United States v. Cox*, Case No. 1:18-CR-279-TSE (ECF No. 34 [Minute Entry]).

account, Cox created a new entity, MSC Global, complete with its own bank account at yet another financial institution, in order to further divert funds. The two continued this conduct after they had been informed FK was shut down so that they could continue to pay themselves money. Cox got the lion's share of the stolen money: over $184,000 of the $255,060.22. PSR ¶¶ 39, 43(a), 97.

The government's recommended sentence is also necessary in light of the defendant's personal history and characteristics. To be sure, McDowell should be commended for his military service. But it was that military background that he and Cox traded on to convince A.A. and others that he was trustworthy and deserved to be in the position he held within FK. McDowell abused A.A.'s trust by cutting him out of the business, and allowing Cox to direct client money to other bank accounts. Simply put, the defendant was an adult with the maturity and life experience to make lawful choices, but he chose not to. A variant sentence of 6 months is thus necessary to account properly for defendant's personal history and characteristics, and to avoid unwarranted sentencing disparities with defendant Peder Cox, who received a 9 month sentence on December 7, 2018.

**IV.    Restitution & Forfeiture**

The United States respectfully requests that the Court order restitution be imposed against McDowell for the full amount of losses ($255,060.22) suffered by the victim of McDowell's relevant conduct, FK.[5] Restitution is not disputed in the plea agreement. Neither is forfeiture disputed. Thus, McDowell is also subject to a money judgment in the amount of proceeds he obtained as a result of the offense, $70,321.02.[6]

---

[5] Any restitution the Court imposes on defendant McDowell should be jointly and severally held with any restitution the Court may impose on defendant Peder Cox.

[6] Proposed orders for restitution and forfeiture are attached to this sentencing position.

**V.      Conclusion**

For the reasons stated, the United States requests that this Court impose a term of incarceration of 6 months, a period of supervised release, and restitution to the victim company, FK.

>                         Respectfully submitted,
>
>                         G. Zachary Terwilliger
>                         United States Attorney
>
>
> By:          _____/s/_____
>                         Jamar K. Walker
>                         Russell L. Carlberg
>                         Counsel for the United States
>                         Assistant United States Attorneys
>                         U.S. Attorney's Office
>                         2100 Jamieson Ave
>                         Alexandria, VA
>                         Phone: 703-299-3700
>                         Fax: 703-299-3981
>                         Email: jamar.k.walker@usdoj.gov
>                         Email: russell.l.carlberg@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                                                By: _____/s/_____
                                                                         Russell L. Carlberg
                                                                          Assistant United States Attorney